UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RICHARD GONDECK,

                    Plaintiff,

              -v-                              5:23-CV-223

JPMORGAN CHASE BANK, N.A. and
CITIBANK, N.A.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

HANCOCK ESTABROOK, LLP               THOMAS C. CAMBIER, ESQ.
Attorneys for Plaintiff              AMANDA C. NARDOZZA, ESQ.
1800 AXA Tower I                     MARY L. D'AGOSTINO, ESQ.
100 Madison Street
Syracuse, NY 13202

ZEICHNER ELLMAN & KRAUSE, LLP        BARRY J. GLICKMAN, ESQ.
Attorneys for Defendants             BRYAN D. LEINBACH, ESQ.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On December 6, 2022, plaintiff Richard Gondeck ("Gondeck" or "plaintiff")

filed this civil action against defendants JPMorgan Chase Bank, N.A.

("JPMorgan Chase") and Citibank, N.A. ("Citibank") (collectively "defendants") in Supreme Court, Onondaga County alleging state-law claims for negligence and conversion.  Ex. A to Dkt. No. 1.  Thereafter, defendants jointly removed this action to federal court on February 21, 2023.  *See* Dkt. No. 1.

On March 21, 2023, defendants moved to dismiss Gondeck's complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Dkt. No. 21.  In response, plaintiff amended his pleading as of right, Dkt. No. 26, and defendants' motion to dismiss was denied as moot.  Dkt. No. 30.

Plaintiff's second amended complaint[1] asserts claims for negligence and conversion based on defendants' allegedly wrongful acceptance of, and payment on, a joint homeowners' insurance check without proper indorsement from plaintiff, who was a named co-payee.  Dkt. No. 26.

On June 2, 2023, defendants renewed their motion to dismiss plaintiff's operative complaint.[2]  Dkt. No. 39.  The motion has been fully briefed and will be considered without oral argument.

---

[1]  This pleading is labeled "second amended complaint" because plaintiff had previously amended his pleading in state court to name the correct bank defendants.  Ex. A to Not. of Rem. Dkt. No. 1-1.

[2]  Plaintiff originally named Travco Insurance Company ("Travco") as a defendant in his second amended complaint and alleged breach of contract and equitable estoppel claims against the insurance company.  Dkt. No. 26.  After Travco moved to dismiss, Dkt. No. 42, plaintiff voluntarily dismissed his claims against this defendant, Dkt. No. 51.

## II. <u>BACKGROUND</u>

This case is about Gondeck's interest in, and ability to recover, the missing proceeds of a joint homeowner's insurance check (the "Check").  Compl. ¶ 14–15.  The Check was originally issued to co-payees: plaintiff, who owned the damaged property, and an aging woman named Jeanne Agrusti ("Agrusti"), who had retained a life estate in the dwelling.  *Id.* at ¶¶ 5, 15.

Prior to the events of this case, Agrusti owned a house located in Kirkville, New York (the "Property").  Compl. ¶ 4; Ex. A to Compl., Dkt. No. 26-1.  She executed a New York Statutory Short Form Power of Attorney (the "Power of Attorney") appointing Paul Freeman ("Freeman") as her agent and Meredith Moore ("Moore") as a successor agent.  Compl. ¶¶ 10–11; Ex. C to Compl., Dkt. No. 26-3.

In late November 2015, Gondeck purchased the Property from Agrusti.  Compl. ¶ 4; Ex. A to Compl., Dkt. No. 26-1.  As part of the deal, Agrusti retained a life estate—entitling her to use the premises until her death.  *Id.*  The Property was insured by Travco Insurance Company ("Travco").  Ex. B to Compl., Dkt. No. 26-2.  As a result of their shared interests in the property, both plaintiff and Agrusti were listed on the homeowner's policy: Agrusti as the "named insured" and plaintiff as an "additional insured."  Compl. ¶ 6; Ex. B to Compl.

For several years, Agrusti occupied the Property without incident.  During this period of time, Freeman—Agrusti's agent—delegated his powers under the Power of Attorney to Agrusti's stepson, Dennis Agrusti ("Dennis"). Compl. ¶¶ 12–13; Ex. D to Compl., Dkt. No. 26-4.  According to plaintiff, Dennis would turn out to be an untrustworthy choice.  *Id.* at ¶¶ 21–23.

On February 1, 2022, a pipe burst at the Property, flooding the home and leaving it uninhabitable.  Compl. ¶¶ 14, 23.  A homeowners' insurance claim was filed and Travco later issued a payment (the "Check") in the amount of $81,353.03 payable to Agrusti *and* Gondeck as co-payees.  *Id.* at ¶ 15; Ex. E to Compl., Dkt. No. 25-5.  Notably, the Check was issued from the insurer's Citibank account.

Gondeck alleges that he requested that Travco deliver the Check to him, since he was an additional insured on the policy.  Compl. at ¶ 57–59.  But Travco delivered the Check to Dennis instead.[3]  Compl. at ¶ 16; *see also* Ex. F to Compl.  According to plaintiff, shortly after Dennis received the Check, he indorsed it "for deposit only" and deposited it with JPMorgan Chase on May 25, 2022.  *Id.* at ¶ 18–19.  Plaintiff alleges that JPMorgan Chase wrongfully accepted the check, and Citibank wrongfully paid the check because it lacked

---

[3] In a May 18, 2022 letter that accompanied the Check, Travco stated that plaintiff was listed as a co-payee in recognition of his shared legal and financial interests in the Property.  Ex. F to Compl., Dkt. No. 26-6.

proper indorsement from both co-payees.  *Id.* at ¶ 28.  Agrusti died on October 21, 2022.  Defs.' Mem at 3; Pl.'s Mem at 7.[4]  Shortly afterward, Dennis absconded with the proceeds of the Check.  Compl. ¶ 22.  The Property remains flooded and uninhabitable.  *Id.* at ¶ 23.

## III.  **LEGAL STANDARD**

### A.  **Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be sufficient to elevate the plaintiff's right to relief above the level of speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So, while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept all of the factual allegations contained in the complaint as true and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or

---

[4] Pagination corresponds to CM/ECF.

incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

**B. <u>Rule 12(b)(7)</u>**

Dismissal of an action under Rule 12(b)(7) is required where a plaintiff fails to join an indispensable party under Rule 19. *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 257 (S.D.N.Y. 2010) (citing *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000)).

In deciding a 12(b)(7) motion, the court must accept all factual allegations in the complaint as true and may go beyond the pleadings to consider extrinsic evidence such as affidavits. *Plymouth Res., LLC. V. Norse Energy Corp. USA*, 2011 WL 13234819, at *10 (N.D.N.Y. Mar. 10, 2011) (citing *Davis Co. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 (7th Cir. 2001)).

The movant carries the burden to prove that the joinder of required parties is not feasible, and that dismissal is required. *Monbo v. Nathan*, 623 F. Supp. 3d 56, 130 (E.D.N.Y. 2022); *see also Holland v. Fahnestock & Co.*, 210 F.R.D. 487, 495 (S.D.N.Y. 2002).

Rule 19 sets out a two-step analysis for determining whether the inability to join a party requires dismissal of the plaintiff's case. *See Fed. Ins. Co.*, 758 F. Supp. 2d at 257 (citing *Viacom Int'l, Inc.*, 212 F.3d at 724). First, the absent party must be a "required" party within the meaning of Rule 19(a); and second, where that party cannot feasibly be joined, the absent party must

be indispensable to the case. *Viacom Int'l, Inc.*, 212 F.3d at 725.  Under Rule

19(a) an absent party is required only if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a).  Once it has been determined that an absent party is

both required and cannot feasibly be joined, the reviewing court will analyze

the Rule 19(b) factors to determine whether a required party is

"indispensable." *Viacom Int'l, Inc.*, 212 F.3d at 725; *see also Temple v.*

*Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990); *Jonesfilm v. Lion Gate Int'l*, 299

F.3d 134, 139 (2d Cir. 2002).  Rule 19(b) outlines four factors to be considered

by the reviewing court:

> (1) to what extent a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

FED R. CIV. P. 19(b). The Second Circuit has instructed district courts to take a "flexible" approach to Rule 19(b) and cautions that "very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Univ. Reinsurance Co., Ltd. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002) (quoting *Jasper v. N.Y. Prop Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987)); *see also Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir. 1984) (citation omitted) ("The language of Rule 19(b) leaves the district court with substantial discretion[.]").

## IV. <u>DISCUSSION</u>

As an initial matter, the parties agree that Gondeck's negligence claims against defendants should be dismissed. Defs.' Mem., Dkt. No. 39 at 10; Pl.'s Opp'n, Dkt. No. 43 at 8 n.3. As to plaintiff's remaining claim for conversion, defendants advance two theories for dismissal. Defs.' Mem. at 5, 13. First, defendants argue that plaintiff lacks standing because he lacked true ownership of the Check. *Id.* at 5. Second, defendants assert that plaintiff's

case must be dismissed because he failed to join two indispensable parties: Agrusti's Estate (the "Estate"), since Agrusti is now deceased, and Dennis, Agrusti's stepson who ran off with the proceeds. *Id.* at 10.

### A. True Ownership of the Check

First, defendants argue that Gondeck lacks standing to sue for conversion because he lacked true ownership of the Check when it was accepted for deposit and payment without plaintiff's indorsement. Defs.' Mem. at 5.

Under New York law, claims for conversion are governed by the Uniform Commercial Code ("UCC"). Under UCC § 3-419(1)(c), an instrument is converted when "it is paid on a forged indorsement." The New York Court of Appeals has held that only the "true owner" of a converted instrument has standing to bring a cause of action for conversion. *Lesser v. T.D. Bank, N.A.*, 463 F. Supp. 3d 438 (S.D.N.Y. 2020) (citing *State v. Barclays Bank of N.Y., N.A.*, 563 N.E.2d 11, 12 (N.Y. 1990)).

"True ownership" is satisfied by possession of the Check. *Barclays Bank of N.Y., N.A.*, 563 N.E.2d at 12–14 ("It has long been held that a check has no valid inception until delivery.") (citing *Irving Trust Co. v. Leff*, 171 N.E. 569, 571 (N.Y. 1930)). But possession may be actual or constructive. *Id.*

The parties agree that plaintiff never acquired *actual* possession of the Check. Instead, they agree the Check was delivered to Dennis, who retained actual possession of it until it was deposited with defendants. Defs.' Mem. at

6; Pl.'s Opp'n. at 10.  However, the parties dispute whether plaintiff ever acquired *constructive* possession of the Check.  Defs.' Mem. at 6; Pl.'s Opp'n. at 8.

Defendants argue that plaintiff lacked constructive possession of the Check on two grounds: first, that Dennis was not acting as Agrusti's agent at the time of delivery; and second, that even if Dennis was acting as Agrusti's agent, possession by one co-payee through her agent cannot be imputed to the other.  Defs.' Mem. at 7–8.

### 1. __Agency Relationship Between Agrusti and Dennis__

As a preliminary matter, it must be established whether Gondeck has plausibly alleged that Dennis was acting as Agrusti's agent.  Defs.' Mem. at 8.  According to plaintiff, Agrusti's original agent, Freeman, delegated his authority to Dennis in 2015.  Compl. at ¶ 12–13.  Defendants argue that Freeman's delegation of his authority to Dennis under the Power of Attorney was impermissible because the Power of Attorney lists Moore as Freeman's successor agent, not Dennis.  Defs.' Reply, Dkt. No. 48 at 6.

Upon review, Gondeck has plausibly alleged that Dennis was acting as Agrusti's agent when the Check was delivered to him.  Plaintiff alleges that on February 26, 2021, Freeman validly delegated the authority granted to him by the Power of Attorney to Dennis and that Dennis accepted those powers.  Compl. ¶¶ 12–13.  Further, a cursory reading of the Power of

Attorney, which is appended to the operative pleading, reveals that Freeman was granted the power to delegate his authority to whomever he wished—including Dennis.[5]  Ex. C to Compl. at 2.

Broadly construed, defendants' argument goes on to suggest that Dennis exceeded the scope of his authority when he absconded with the proceeds of the Check.  Defs.' Mem. at 7.  But it is not necessary to reach this issue.  As mentioned *supra*, for purposes of the UCC plaintiff's true ownership of the Check is established at the time of delivery.  *See Lesser*, 463 F. Supp. 3d at 450.

Whether Dennis did in fact exceed the scope of his authority when he absconded with the proceeds is a question of fact that cannot be answered at the motion-to-dismiss stage.  Accordingly, plaintiff has alleged sufficient facts to establish a *prima facie* case for conversion under the UCC.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## 2. <u>Constructive Possession Imputed to Co-Payees</u>

The next question is whether possession of a joint check by one co-payee may be imputed to the other under the relevant state law.  Defs.' Mem. at 13.

---

[5] The Power of Attorney granted Freeman, *inter alia*, the "full and unqualified authority . . . to delegate any or all of the foregoing powers to any persons whom my agent(s) select[.]"  Ex. C to Compl.

Under New York law, mere status as a named payee on a check alone is insufficient to acquire possession.  *Barclays Bank of N.Y., N.A.*, 563 N.E.2d at 13.  However, when one named co-payee on a joint check acquires possession of the instrument, the remaining co-payee(s) acquire constructive possession. *See id.* (collecting cases).

Measured against this standard, Gondeck has plausibly alleged that he assumed true ownership of the Check under a theory of constructive possession.  Plaintiff further alleges that the Check was delivered to Dennis on or about May 18, 2022, while he was acting as Agrusti's agent.[6]  Compl. ¶¶ 13, 16.  Accordingly, defendants' motion to dismiss for failure to state a plausible claim for conversion will be denied.

## B.  **Joinder**

The remaining question is whether defendants have established that plaintiff has failed to join indispensable parties under Rule 19.  Defendants assert that both the Estate and Dennis are indispensable parties to this case and that in their absence plaintiff's complaint must be dismissed.  Defs.' Mem. at 13.  As the movants, defendants carry the burden of proving that the Estate and Dennis are indispensable.  *See Monbo*, 623 F. Supp. 3d at 130; *Holland*, 210 F.R.D. at 495.

---

[6] While defendants argue that Gondeck failed to allege in his complaint that Agrusti had not revoked or modified her Power of Attorney in any way prior to the delegation, any ambiguity as to the efficacy of the Power of Attorney must be resolved in favor of plaintiff, since he is the nonmovant.

As discussed *supra*, indispensability under Rule 19(b) is predicated upon a showing that an absent party is both required *and* that joinder is not feasible. *See Viacom Int'l, Inc.*, 212 F.3d at 725; *see also Temple*, 498 U.S. at 7; *Jonesfilm*, 299 F.3d at 139.  Thus, defendants must demonstrate that the Estate and Dennis are required within the meaning of Rule 19(a) and that both parties cannot feasibly be joined before an analysis of indispensability under Rule 19(b) is warranted.  *See Monbo*, 623 F. Supp. 3d at 130.

Upon review, defendants' joinder argument must be rejected.  Even if defendants have carried their burden of demonstrating why the Estate and Dennis are required parties, defendants do not offer *any* arguments as to how or why the Estate and Dennis are unable to be joined to plaintiff's case. Defs.' Mem. at 13–15; Defs.' Reply at 9.

In the absence of any argument as to why the Estate and Dennis cannot be joined, defendants have not carried their burden of demonstrating that the parties are indispensable.  Accordingly, this argument must be rejected.  *E.g., Temple*, 498 U.S. at 7.

## V.  **CONCLUSION**

Although he has abandoned his negligence claims, Gondeck has plausibly alleged a UCC claim for conversion against defendants.  Defendants have also failed to establish that the Estate or Dennis are indispensable parties.

Therefore, it is

ORDERED that

Defendants' motion to dismiss is GRANTED in part and DENIED in part;

1.  The negligence claims are DISMISSED;

2.  The motion to dismiss the UCC conversion claims is DENIED; and

3.  Defendants shall file an answer to the Second Amended Complaint on or before December 18, 2023.

The Clerk of the Court is directed to terminate the pending motion.

IT IS SO ORDERED.

Dated:  December 7, 2023
        Utica, New York.

David N. Hurd
U.S. District Judge